UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIFFANI VINCENT,

                Plaintiff,

    v.

NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK,

                Defendant.

No.

COMPLAINT FOR DAMAGES

**JURY DEMANDED**

## I.    PARTIES

1. Plaintiff, Tiffani Vincent, ("plaintiff" or "Ms. Vincent") is a resident of the State of Washington.

2. Defendant National Railroad Passenger Corporation ("Amtrak") is a corporation with headquarters in Washington, D.C. Amtrak transacts business within the State of Washington.

3. There potentially exist additional entities and/or "John Does" who may share fault for plaintiff's injuries described herein. If the identity of additional at-fault parties becomes known, plaintiff's Complaint will be amended accordingly.

## II.    JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §1332 because the parties reside in different states and the amount in controversy exceeds $75,000.

COMPLAINT FOR DAMAGES - 1
Case No.
003241-11/1112986 V1



HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), because a substantial portion of the events giving rise to plaintiff's claims occurred within this judicial district and because Amtrak is subject to personal jurisdiction with respect to plaintiff's claim.

### III.   BACKGROUND FACTS

#### A.   Flawed Culture of Safety

6. In recent years, Amtrak has exhibited a deeply flawed culture of safety that frequently downplayed serious risks of injury to both its passengers and the public at large.

7. On April 3, 2016, an Amtrak collision occurred in Chester, Pennsylvania that resulted in numerous serious injuries and fatalities. This collision exemplified Amtrak's inconsistent and ineffective vision of safety seen throughout the organization.

8. The National Transportation Safety Board ("NTSB") investigated this collision and found twenty active failures and more than twenty-four unsafe conditions, including safety rule violations and other dangerous practices. After reviewing the facts of the Chester tragedy, the Chairman of the NTSB, Robert Sumwalt, warned that "Amtrak's safety culture is failing, and is primed to fail again, until and unless Amtrak changes the way it practices safety management." Unfortunately for Ms. Vincent, Amtrak did not heed Mr. Sumwalt's warning.

#### B.   December 18, 2017 – Amtrak 501 Derails

9. On December 18, 2017, at approximately 6:00 a.m., Amtrak passenger train 501 left King Street Station in Seattle, heading southbound towards Portland, Oregon. Amtrak 501 was making its inaugural passenger trip on the newly renovated Nisqually-Tacoma bypass route.

10. Amtrak 501 was equipped with a safety feature known a Positive Train Control system ("PTC"). PTC systems are designed to increase the safety of trains by decreasing the likelihood of derailments caused by excessive speeds.

11. PTC also provides real-time information to train crews about, among other things, the areas in which a train's speed should be decreased or when areas of track governed by speed limits are approaching.

COMPLAINT FOR DAMAGES - 2
Case No.
003241-11/1112986 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

12. PTC systems also provide train crews with warnings regarding the safe braking distances on curved or reduced-speed stretches of track and displays the information on screens within the locomotive's cab.

13. In the event that a train engineer does not respond to the various warnings provided, the PTC system is designed to automatically brake the train in order to prevent dangerous condition, such as derailments, from occurring.

14. In 2008, the United States Congress enacted the Rail Safety Improvement Act of 2008 ("RSIA"). The RSIA required that passenger railroads, including Amtrak, install PTC systems no later than the end of 2015—seven years after the law was passed.

15. While Amtrak 501 was equipped with a PTC system, it was inexplicably—and inexcusably—inoperable as the train began its journey to Portland on December 18, 2017.

16. At approximately 7:33 a.m., Amtrak 501 was approaching a segment of track approximately 40 miles south of Seattle. This segment of track, located near milepost 19.86, is characterized by a sharp curve.

17. As Amtrak 501 approached the curve, it was traveling at 78 mph. The speed limit for this stretch of track was 30 mph.

18. The engineer responsible for Amtrak 501 did not observe the posted speed limit signage along the track leading up to the curve at milepost 19.86. Because the PTC system for Amtrak 501 was not operational, the engineer was not warned to decrease speed and the system did not automatically brake the train.

19. As the train entered the sharp curve near milepost 19.86, it derailed while crossing a bridge traversing Interstate 5, spilling train cars onto the roadway below.

C. **Tiffani Vincent**

20. Just as Amtrak 501 was about to derail, Ms. Vincent was driving southbound on Interstate 5. Ms. Vincent was returning home after driving her sister to SeaTac airport.

21. As she approached the train overpass over which Amtrak 501 was about to cross, the Amtrak train started to come off of the tracks and fall directly into her lane of traffic. Despite

COMPLAINT FOR DAMAGES - 3
Case No.
003241-11/1112986 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

her best efforts, her Kia Soul collided with one of the train cars.  One of the cars landed partially on top of her vehicle pushing it onto the left lane guardrail where it came to rest.

22. When paramedics arrived, they were able to extract Ms. Vincent on a backboard and transport her to Allenmore hospital where she was diagnosed with multiple factures of her spine and foot, as well as countless abrasions to her face, torso and legs.  She also suffered a traumatic nasal fracture resulting in a deviation of her septum.

23. Due to the severity of her injuries, her treating providers made the decision to emergently transport Ms. Vincent to St. Joseph's Hospital Trauma Center.  Ms. Vincent underwent emergency surgery to address the fractures of her spine.  Upon discharge, Ms. Vincent required months of physical therapy and subsequent surgery.

24. At the time of the derailment, Ms. Vincent was 23 year-old active duty member of the United States Air Force.  Ms. Vincent's MOS with the Air Force was as a military police officer.

25. Due to her injuries, Ms. Vincent was prevented from training with her unit.  In addition, because of the extensive surgical hardware in her spine and the weight bearing limitations imposed by her physicians, Ms. Vincent was not permitted to wear a bulletproof vest—required equipment for MP's.  Because of these limitations, Ms. Vincent will be medically discharged from the United States Air Force due to her inability to physically perform her duties.

### IV. LIABILITY-NEGLIGENCE

26. Amtrak was, at all times relevant, a common carrier that owed others the highest duties of care.  Amtrak's duty further required that it act reasonably to prevent foreseeable harm to others.

27. Through its actions and omissions, and acting through its employees, agents and/or contractors, Amtrak breached its duties in one or more of the following ways:

- Failing to operate Amtrak 501 at an reasonably safe speed;
- Failing to operate Amtrak 501 in accordance with posted speed limitations;
- Failing to install and/or implement proper safety features, including PTC;
- Failing to comply with its own safety procedures and/or policies;



- Failure to properly train and/or supervise its employees, agents and/or contractors;
- Failure to keep a proper lookout;
- Failure to comply with applicable federal standards of care, including, but not limited to, failure to comply with applicable statutes and/or regulations.

28. As a direct and proximate cause of Amtrak's negligence, Ms. Vincent suffered serious harm in an amount to be proven with specificity at trial.

29. Amtrak is also liable for punitive and/or exemplary damages under choice of law principles for its wanton, reckless and willful disregard for safety.

## V. DAMAGES AVAILABLE

30. At the time of the derailment of its derailment, Ms. Vincent was not a passenger on Amtrak 501.

31. Ms. Vincent's claim for damages is not subject to the limitations imposed pursuant to 49 U.S.C. §28103 and/or pursuant to the Fixing American's Surface Transportation Act.

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiff request that the Court enter judgment in the following fashion:

A. The full amount of Plaintiff's special damages;

B. The full amount of Plaintiff's general damages;

C. Exemplary damages to the full extent allowed by law; and

D. Such other and further relief the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury.

COMPLAINT FOR DAMAGES - 5
Case No.
003241-11/1112986 V1



1301 Second Avenue, Suite 2000 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

| | |
|---|---|
| 1  DATED: April 4, 2019 | HAGENS BERMAN SOBOL SHAPIRO LLP |

By: _/s/Anthony D. Shapiro_
    Anthony D. Shapiro, WSBA No. 12824
   _/s/Marty McLean_
    Marty McLean, WSBA No. 33269
    1301 Second Avenue, Suite 2000
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594
    Email:   tony@hbsslaw.com
           martym@hbsslaw.com

COMPLAINT FOR DAMAGES - 6
Case No.
003241-11/1112986 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594